AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Residence Located at | ) Case No.    MJ21-309 |
| 2000 Northeast 16th Street, Renton, Washington | ) |
| More Fully Described in Attachment A | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A Residence, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and 846 | Distribution, Possession and Conspiracy with Intent to Distribute Controlled Substance |
| 21 U.S.C. § 843(b) | Unlawful Use of U.S. Mails to Facilitate Distribution of Controlled Substances |

The application is based on these facts:

✓ See Affidavit of USPS Special Agent Casey Snyder, attached hereto and incorporatated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

CASEY J. SNYDER, Special Agent, USPS OIG
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:    05/26/2021

_____
*Judge's signature*

City and state:  Seattle, Washington

BRIAN A. TSUCHIDA, United States Magistrate Judge
*Printed name and title*

### AFFIDAVIT OF CASEY J. SNYDER

STATE OF WASHINGTON          )
                             )     ss
COUNTY OF KING               )

I, Casey J. Snyder, being first duly sworn on oath, hereby depose and say:

### INTRODUCTION

1.     **Affiant Background.**  I am a Special Agent with the United States Postal Service Office of Inspector General ("USPS-OIG"), assigned to the Seattle Field Office. I have been a Special Agent with the USPS-OIG since February of 2012.  I am authorized to enforce the laws of the United States and to investigate crimes committed against the U.S. Postal Service or by U.S. Postal Service employees.  Prior to joining the USPS-OIG, I was a Special Agent with the Air Force Office of Special Investigations (AFOSI) for approximately four years.  I received my initial training at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia.  I was trained in various investigative methods such as interviewing and interrogation, surveillance, search and seizure, the identification of various types of controlled substances by sight and odor, the way in which controlled substances are packaged, marketed, and consumed, and the effects of various controlled substances on human physiology.  I have conducted numerous narcotics investigations involving the manufacturing, possession, and distribution of controlled substances.

2.     **Duties, Training & Experience.**  As part of my duties, I investigate the use of the U.S. mails to illegally mail and receive controlled substances, the proceeds of drug trafficking, as well as other instrumentalities associated with drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances), 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances and proceeds from the sale thereof), and 846 (controlled substances conspiracy).  As set forth

Affidavit of Special Agent Casey J. Snyder – 1
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  below, my training and experience includes identifying parcels with characteristics

2  indicative of criminal activity.  During my employment with the USPS-OIG, I have

3  participated in many criminal investigations involving suspicious parcels and controlled

4  substances.

5  **INTRODUCTION AND PURPOSE OF AFFIDAVIT**

6      3.      This affidavit is submitted in support of an application for search warrants

7  for the following location, person, and vehicle:

8          (a)      2000 Northeast 16th Street, Renton, Washington, 98056 (Herein

9  referred to as the "**SUBJECT PREMISES**"), further described in Attachment A, which

10  is incorporated herein by reference.

11      4.      For the **SUBJECT PREMISES**, authority to search extends to all parts of

12  the property, including main structure, garage(s), storage structures, outbuildings, and

13  curtilage, and all vehicles, containers, compartments, or safes located on the property,

14  whether locked or not, where the items described in Attachment B (items to be seized)

15  could be found.

16      5.      As set forth below, there is probable cause to believe that the **SUBJECT**

17  **PREMISES**, will contain or possess evidence, fruits, and instrumentalities of possession

18  of controlled substances with intent to distribute, and distribution of controlled

19  substances, in violation of Title 21, United States Code, Section 841(a).  I seek

20  authorization to search and seize the items specified in Attachment B, which is

21  incorporated herein by reference.

22      6.      The information contained in this affidavit is based upon knowledge I

23  gained from my investigation, my personal observations, my training and experience, and

24  investigation by other law enforcement officers.  Because this affidavit is being submitted

25  for the limited purpose of securing a search warrant, I have not included every fact of

26  which I am aware pertaining to the investigation.  I have set forth only those facts that I

27  believe are relevant to determination of probable cause to support the issuance of the

28

Affidavit of Special Agent Casey J. Snyder – 2
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    requested warrants.  When the statements of others are set forth in this affidavit, they are
2    set forth in substance and in part.

3                                    **THE INVESTIGATION**

4          7.        In November of 2020, investigators with the United States Postal
5    Inspection Service (USPIS) identified multiple parcels being mailed from various
6    locations to Bellevue, Washington.  The parcel were Express Mail parcels, paid in cash,
7    and primarily destined to the same Postal Service delivery route.  The delivery route was
8    identified as route 83, in Bellevue, Washington.  Postal Service records indicated this
9    route was normally delivered by TRI HIEN DUONG.  Evidence indicates that DUONG,
10   a Postal Service employee, is using his position with the USPS to traffic controlled
11   substances and/or the proceeds from the sale of controlled substances.  The investigation
12   has shown DUONG is receiving parcels on his delivery route, which contain United
13   States currency.  He takes these parcels to his home address or other locations instead of
14   delivering them.

15         8.        The parcels appeared to be destined to true and deliverable addresses, but to
16   names which did not associate to those addresses.  Furthermore, the parcels are regularly
17   mailed from the same city and state, such as Oak Grove, Kentucky; Clarksville,
18   Tennessee; and Atlanta, Georgia.  With few exceptions, the Express Mail parcels only
19   arrive on days when DUONG is on duty and delivers mail on route 83.

20         9.        Postal Service records show DUONG's address as 16004 Lake Hills
21   Boulevard, Bellevue, Washington, 98008.  Physical surveillance and law enforcement
22   records show DUONG resides at 15103 Southeast Newport Way, Bellevue, Washington,
23   98006.  On January 13, 2021, investigators obtained a federal warrant to track DUONG's
24   personal vehicle, a red, Acura RDX, bearing Washington license plate BWP2727 (Herein
25   referred to as DUONG's red Acura).  Data from the tracker affixed to the DUONG's red
26   Acura, combined with physical surveillance, has confirmed DUONG's residence to be
27   15103 Southeast Newport Way, Bellevue, Washington.

28

Affidavit of Special Agent Casey J. Snyder – 3
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10. According to law enforcement records, DUONG is 33 years old, with a prior Washington State conviction for Possession of Controlled Substances with no Prescription (2019). DUONG also had an arrest in 2017 which appeared not to have led to a conviction, for Possession of a Controlled Substance with no Prescription.

11. On December 11, 2020, investigators executed a federal search warrant on Express Mail parcel EJ253292487US, which was mailed from Cadiz, Kentucky to Duong T, 16004 Lake Hills Boulevard, Bellevue, Washington 98008. In obtaining probable cause to search the parcel, investigators utilized a narcotics detection canine, who alerted to the presence of controlled substances, in or on the parcel. This parcel contained $52,000 in United States currency.

12. On December 31, 2020, investigators conducted surveillance on DUONG. Postal Service records indicated two Express Mail parcels, similar to the parcels described above, were intended for DUONG's delivery route; however, they did not arrive to be delivered. Postal Service records showed DUONG, while on-duty with the Postal Service, drove to his residence at 15103 Southeast Newport Way, Bellevue, Washington. Postal Service records confirmed this address is not on the delivery route DUONG was assigned to. DUONG stayed at this location for approximately 17 minutes; before returning to his place of work; located at 13400 Southeast 30th Street, Bellevue, Washington 98005.

13. On January 7, 2020, investigators conducted surveillance on DUONG as he delivered mail. Postal Service records indicated two Express Mail parcels were destined to Duong's delivery route. Both parcels were similar to the parcels described above. With the assistance of covert cameras installed in the delivery vehicle operated by DUONG, investigators observed DUONG bring two Express Mail parcels into his delivery vehicle. At approximately 11:08am, DUONG scanned both parcels as delivered. DUONG was not in the vicinity of the destination addresses when he did so. DUONG then drove, in the Postal Service delivery vehicle, to his residence, at 15103 Southeast Newport Way, Bellevue, Washington. After arriving at the **SUBJECT PREMISES**,

Affidavit of Special Agent Casey J. Snyder – 4
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  DUONG removed both parcels from the vehicle and walked towards the residence.

2  When he returned to the vehicle, he did not have the parcels. DUONG departed the

3  location and resumed delivering mail. When DUONG finished work, he drove his red

4  Acura directly to his residence. Approximately 15 minutes later, DUONG departed in his

5  red Acura and drove to 2000 Northeast 16th Street, Renton, Washington.

6      14.    Law enforcement records show 2000 Northeast 16th Street, Renton,

7  Washington is owned by TAI LING-CHEN. Law enforcement records showed a TAN

8  VAN NGUYEN as associated with this address.

9      15.    According to law enforcement records, NGUYEN is 43 years old. Law

10  enforcement records indicated in 2004, NGUYEN was federally convicted of Conspiracy

11  to Traffic in Marijuana. In 2005, NGUYEN was federally convicted of Conspiracy to

12  Engage in Money Laundering. In 2013, NGUYEN was federally convicted of

13  Conspiracy of Producing Marijuana; Specifically, Indoor Marijuana Cultivation.

14      16.    On January 12, 2021, investigators conducted surveillance on DUONG.

15  Postal Service records indicated DUONG handled/scanned two Express Mail parcels

16  similar to those described above. Investigators followed DUONG from his delivery route

17  to his residence at 15103 Southeast Newport Way, Bellevue, Washington. DUONG

18  exited the delivery vehicle with what appeared to be two Express Mail parcels. DUONG

19  appeared to enter the residence with the parcels. A few minutes later, DUONG exited the

20  residence without the parcels, entered the delivery vehicle, and departed.

21      17.    On January 15, 2021, Postal Service records indicated an Express Mail

22  parcel similar to those described above was destined to DUONG's delivery route. Using

23  the covert cameras in DUONG's delivery vehicle, investigators observed DUONG scan

24  the parcel, then handle his cell phone. DUONG then removed the label from the Express

25  Mail parcel and placed the parcel in his black backpack. After doing so, DUONG again

26  handled his cell phone. Data from the GPS tracker affixed to DUONG's red Acura

27  indicated DUONG drove directly from work that afternoon to the **SUBJECT**

28  **PREMISES**.

Affidavit of Special Agent Casey J. Snyder – 5
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.     On January 25, 2021, Postal Service records indicated two Express Mail parcels, similar to those described above, were destined to DUONG's delivery route. One originated in Kentucky, the other in Tennessee.  Using the covert cameras in DUONG's delivery vehicle, investigators were able to observe DUONG scan the parcels as delivered and remove the labels from the parcels.  DUONG drove the Postal Service delivery vehicle to his residence, at 15103 Southeast Newport Way, Bellevue, Washington, and exited the vehicle.  DUONG returned to the delivery vehicle and retrieved the two Express Mail parcels, then walked back to the residence.  DUONG returned to the delivery vehicle without the parcels.  DUONG appeared to make a phone call before driving back towards his delivery route and resuming his duties.  Data from the GPS tracker affixed to DUONG's red Acura indicated he drove that night to the **SUBJECT PREMISES**.

19.     On February 4, 2021, investigators surveilled DUONG, with the assistance of the tracker affixed to DUONG's red Acura.  Postal Service records indicated two Express Mail parcels, similar to those described above, were destined to DUONG's delivery route.  Postal Service records additionally showed that DUONG handled both parcels, but due to equipment failure, investigators were not able to observe him doing so.  Investigators observed DUONG leave work that afternoon and place a black backpack, similar to the black backpack used previously, in the rear of his red Acura.  That evening, investigators observed DUONG drive his red Acura to the **SUBJECT PREMISES**.  DUONG entered and exited the residence carrying what appeared to be a large dark bag or backpack which he placed in the rear of the DUONG's red Acura.  DUONG then drove back to his residence at 15103 Southeast Newport Way, Bellevue, Washington.

20.     On February 26, 2021, Postal Service records indicated two Express Mail parcels, similar to those described above, were destined to DUONG's delivery route.  One of these parcels originated in Atlanta, GA, the other in Clarksville, TN.  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG enter his

Affidavit of Special Agent Casey J. Snyder – 6
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  delivery vehicle with two Express Mail parcels which he scanned as delivered.  DUONG
2  handled his cell phone, while driving the Postal Service delivery vehicle to his residence
3  at 15103 Southeast Newport Way, Bellevue, Washington.  Upon arriving at this
4  residence, DUONG took the two Express Mail parcels from the delivery vehicle and
5  walked towards the residence.  When DUONG returned to the delivery vehicle, he did
6  not have the parcels.  Data from the GPS tracker affixed to DUONG's red Acura showed
7  DUONG drove home after work.  After approximately three hours, DUONG departed his
8  residence in his red Acura and drove directly to the **SUBJECT PREMISES**.

9      21.    On March 9, 2021, Postal Service records indicated an Express Mail parcel,
10  similar to those described above, was destined to DUONG's delivery route.  Using the
11  covert cameras in DUONG's delivery vehicle, investigators observed DUONG scan the
12  parcel, then place it in his backpack, within the delivery vehicle.  DUONG then grabbed
13  his cell phone and exited the vehicle.  Using the covert cameras installed in DUONG's
14  delivery vehicle, investigators observed DUONG throughout his shift.  The parcel
15  appeared to stay within the black backpack.  At the end of his shift, DUONG returned to
16  the Bellevue Carrier Annex and exited the delivery vehicle with his black backpack.
17  Data from the GPS tracker affixed to DUONG's red Acura showed DUONG drove his
18  red Acura directly from work to the **SUBJECT PREMISES**.

19      22.    On March 17, 2021, investigators conducted surveillance on DUONG with
20  the assistance of the GPS tracker affixed to DUONG's red Acura.  Postal Service records
21  indicated DUONG was receiving four parcels similar to those described above.
22  Investigators observed DUONG travel to his residence at 15103 Southeast Newport Way,
23  Bellevue, Washington, while on duty, after collecting these parcels from the Bellevue
24  Carrier Annex.  In the evening of March 17, 2021, DUONG drove his red Acura to the
25  **SUBJECT PREMISES**.  DUONG knocked on the door and waited.  He then turned and
26  appeared to speak with someone at the door.  DUONG then went to DUONG's red Acura
27  and retrieved what appeared to be a white bag with large square objects in it, which he
28

Affidavit of Special Agent Casey J. Snyder – 7
USAO #2021R00039

1  carried into the residence.  DUONG exited the residence shortly after, without the bag or

2  its contents and departed in his red Acura.

3      23.    On March 25, 2021, Postal Service records indicated three Express Mail

4  parcels, similar to those described above, were destined to DUONG's delivery route.

5  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG

6  drive his delivery vehicle to his residence at 15103 Southeast Newport Way, Bellevue,

7  Washington.  Duong appeared to carry multiple Express Mail parcels towards the

8  residence.  When DUONG returned to the delivery vehicle, he no longer had the parcels.

9  Investigators observed DUONG use his Postal Service scanner to scan something on his

10  cellular phone, multiple times.  DUONG then appeared to input information into the

11  scanner from his cellular phone.  These scan times and locations match Postal Service

12  records for scans associated with the three Express Mail parcels destined to DUONG's

13  delivery route.  Based on my training and experience, I believe DUONG was scanning

14  images of shipping labels, maintained on his cell phone.

15      24.    On March 30, 2021, Postal Service records indicated two Express Mail

16  parcels, similar to those described above, were destined to DUONG's delivery route.

17  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG

18  drive his delivery vehicle to his residence at 15103 Southeast Newport Way, Bellevue,

19  Washington.  DUONG exited the delivery vehicle and walked towards the residence.

20  After returning to the delivery vehicle, DUONG retrieved his wallet and pulled what

21  appeared to be a credit/debit card from the wallet.  DUONG appeared to enter

22  information from the card into his cell phone.  DUONG then used the Postal Service

23  scanner to scan something on his cell phone and wrote something on the scanner.

24  Approximately 30 minutes later, DUONG again used the Postal Service scanner to scan

25  something on his cell phone.  These scan times and locations match Postal Service

26  records for scans associated with the two Express Mail parcels destined to DUONG's

27  delivery route.  Based on my training and experience, I believe DUONG was scanning

28

Affidavit of Special Agent Casey J. Snyder – 8
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  images of shipping labels, maintained on his cell phone.  Data from the GPS affixed to

2  DUONG's red Acura showed he traveled to the **SUBJECT PREMISES** that evening.

3      25.     On April 16, 2021, investigators conducted surveillance on DUONG.

4  Postal Service records indicated two Express Mail parcels, similar to those described

5  above, were destined to DOUNG's delivery route and residence.  The first was Express

6  Mail parcel EJ655332919US, which was mailed from Clarksville, TN to the **SUBJECT**

7  **PREMISES**.  Investigators confirmed this parcel was not addressed to DUONG.  Earlier,

8  on April 16, 2021, investigators executed a federal warrant on this parcel and found it to

9  contain $83,990.00 in U.S. currency.  Investigators placed this mail piece back in the

10 mail stream after examination.  The second parcel was Express Mail parcel

11 EJ647915820US, which was mailed from Atlanta, GA, to 1660 118th Ave S, Bellevue,

12 WA 98005.  This is a deliverable address on DUONG's delivery route.

13     26.     Postal Service records showed both parcels were scanned "Delivered" by

14 DUONG.  Using the covert cameras in DUONG's delivery vehicle, investigators

15 observed DUONG shove at least one of the Express Mail parcels into his black backpack.

16 Later, investigators observed DUONG return to the Bellevue Carrier Annex and exit his

17 delivery vehicle with the backpack.  After leaving work, DUONG drove his red ACURA

18 directly from the Bellevue Carrier Annex to the **SUBJECT PREMISES**.  Investigators

19 observed DUONG enter this residence with the black backpack.  Approximately 10

20 minutes later, investigators observed DUONG exit the residence with the same backpack

21 and depart in DUONG's red Acura.

22     27.     Investigators maintained surveillance on the **SUBJECT PREMISES**.  A

23 blue Chevy Avalanche, bearing Washington license plate C55739M, was parked in front

24 of the **SUBJECT PREMISES**.  Law enforcement records indicated this vehicle was

25 registered to TAN VAN NGUYEN at 9406 10th Ave Ct E, Tacoma, Washington.  At

26 approximately 90 minutes after DUONG departed the **SUBJECT PREMISES**, a silver

27 Honda Civic arrived.  A young Asian male exited the vehicle, walked up to the front

28 door, and entered the residence.  Shortly after, the same Asian male exited the residence

1  carrying what appeared to be a weighted brown bag.  The Asian male entered the silver

2  Honda Civic and departed.  Investigators followed this vehicle to the area near the

3  Renton airport before losing visual.  Law enforcement records showed this vehicle was

4  registered to TUNG NGUYEN, at 22000 84th Avenue South, Trailer 22, Kent,

5  Washington 98032.

6       28.    On April 22, 2021, investigators conducted surveillance on multiple

7  locations associated to this investigation, including 15103 Southeast Newport Way,

8  Bellevue, Washington and the **SUBJECT PREMISES**.  Postal Service records indicated

9  two parcels associated with this investigation were destined to DUONG's delivery route.

10  Postal Service records indicated DUONG drove his delivery vehicle to his residence at

11  15103 Southeast Newport Way, Bellevue, Washington at approximately 10:13am.  Using

12  the covert cameras in DUONG's delivery vehicle, investigators observed DUONG back

13  the vehicle up to the residence and exit towards the residence.  Based on my prior

14  experience and observations in this investigation, I believe DUONG took the two Express

15  Mail parcels from the rear of the delivery vehicle and into the residence.

16       29.    At approximately 3:58pm, at 15103 Southeast Newport Way, Bellevue,

17  Washington, investigators observed an Asian male load something into a blue Toyota

18  Prius, bearing Washington license plate BKS7412.  Law enforcement records showed

19  this vehicle was registered to DAI TRAN at 15103 Southeast Newport Way, Bellevue,

20  Washington.  After loading something into the trunk of the blue Prius, he departed.

21  Based on a review of DAI TRAN's driver license photo, the individual observed

22  appeared to be DAI TRAN.

23       30.    At approximately 4:01pm, a white Lexus, bearing Washington license plate

24  BBC3538 pulled into the driveway at the **SUBJECT PREMISES**.  Law enforcement

25  records showed this vehicle was registered to QUOC PHAM, at 11827 Southeast 189th

26  Place, Renton, Washington.  An Asian male exited the vehicle and carried a box to the

27  front door of the **SUBJECT PREMISES**.  He waited for the door to be answered before

28

Affidavit of Special Agent Casey J. Snyder – 10
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

entering.  After approximately seven minutes, the same Asian male exited the **SUBJECT PREMISES**, carrying the same box.  He entered the white Lexus and departed.

31.   At approximately 4:24pm, investigators observed the blue Prius described above arrive at the **SUBJECT PREMISES**.  DAI TRAN carried a box from the vehicle and waited at the front door.  After the door was answered, TRAN carried the box inside.  After approximately eight minutes, DAI TRAN exited the residence, carrying the same box.  He entered the Prius and departed.  Investigators observed the Prius arrive at 15103 Southeast Newport Way, Bellevue, Washington at approximately 7:48pm.

32.   Shortly after the blue Prius departed, the garage door to the **SUBJECT PREMISES** opened and investigators observed an Asian male, an Asian female, and a small child outside the **SUBJECT PREMISES**.  Based on a review of driver license photos, the Asian male is believed to be TAN VAN NGUYEN.  The Asian female is believed to be TIEN HOANG THAO LE.  Two vehicles were parked in the garage.  A Silver Acura MDX, bearing Washington license plate AWW1456, and a black Mercedes, bearing Washington license plate BLV5332.  Law enforcement records showed the silver Acura was registered to TIEN LE, at 12256 1st Avenue Southwest, Seattle, Washington.  Law enforcement records showed the black Mercedes was registered to TAN VAN NGUYEN, at 9406 10th Avenue Court East, Tacoma, Washington.  Investigators also observed a blue Chevy Avalanche parked along the sidewalk in front of the **SUBJECT PREMISES**.  Law enforcement records showed the blue Avalanche was registered to TAN VAN NGUYEN, at 9406 10th Avenue Court East, Tacoma, Washington.  LE and NGUYEN appeared to have access and control of the **SUBJECT PREMISES**.  Investigators observed LE, NGUYEN, and the child enter the **SUBJECT PREMISES** through the open garage.  Shortly after, the silver Acura departed and the garage door closed.

33.   At approximately 5:40pm, DUONG arrived at 15103 Southeast Newport Way, Bellevue, Washington, in his red Acura.  At approximately 7:50pm, investigators observed DUONG exit the residence and load what appeared to be a large full black

garbage bag and two boxes, which appeared to be Postal Service boxes, into the rear of his red Acura.  DAI TRAN brought DUONG a third box from within the residence, which DUONG placed inside the rear of the red Acura; before he departed.  Investigators followed DUONG to a residence located at 2822 South 376th Place, Federal Way, Washington.  DUONG backed up to the residence and appeared to unload items from the rear of DUONG's red Acura.  After leaving this location, DUONG made a stop in Seattle, Washington, before traveling to the **SUBJECT PREMISES**.

## TACTICS USED BY DRUG TRAFFICKERS

34.     Based on my training and experience, and conversations with other experienced law enforcement agents and officers who have been involved in narcotics cases, I know the following.

35.     The distribution of illegal narcotics is frequently a continuing activity lasting over months and years.  Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale.  Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product.  Drug traffickers often keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.  Dealers often keep these records in their homes and in vehicles that they own, use, or have access to.

36.     It is common for drug traffickers to conceal large quantities of U.S. currency, foreign currency, cryptocurrency, financial instruments, precious metals, jewelry, and other items of value that are proceeds from drug trafficking in their residences and in other storage areas associated with the residence, such as on-site

Affidavit of Special Agent Casey J. Snyder – 12
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

storage lockers, garages, detached storage sheds, and parking stalls, or safes located on the property.

37.     Evidence of excessive wealth beyond an individual's outward means is probative evidence of the distribution of controlled substances.  Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets can be evidence of drug trafficking.  Drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in their homes, places of business, and in vehicles that they own, use, or have access to.

38.     It is common for drug traffickers to maintain equipment and supplies (such as scales, packaging, and masking agents) on hand over a long period, even when they do not have any controlled substances on hand.  The aforementioned items are frequently maintained in the drug trafficker's homes, places of business, stash houses, or storage units, and in vehicles that they own, use, or have access to.

39.     Drug traffickers often have some amount of inventory—namely, illegal drugs—stored in their homes, places of business, stash houses or storage units, and in vehicles that they own, use, or have access to.

40.     It is common for drug traffickers to possess firearms and ammunition to protect their drugs, assets, and persons from hostile gangs, rival traffickers, other criminals, and from law enforcement.  Persons who purchase and possess firearms also tend to maintain the firearms and ammunition for lengthy periods of time.  Firearms can be acquired both legally and unlawfully, without official/traceable documentation.  Persons who acquire firearms from Federal Firearms Licensees, through deliberate fraud and concealment, often will also acquire firearms from private parties and other sources unknown to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Persons who, whether legally or illegally, purchase, possess, sell and/or transfer firearms or ammunition commonly maintain the firearms or ammunition on their person, at their residence or business, or in a motor vehicle which they own and/or operate.  Firearms or

Affidavit of Special Agent Casey J. Snyder – 13
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ammunition are often secreted at other locations within their residential curtilage, and the identification of these firearms will assist in establishing their origin.  Persons who purchase, possess, sell and/or trade firearms or ammunition commonly maintain documents and items that are related to the purchase, ownership, possession, sale and/or transfer of firearms, ammunition, and/or firearm parts, including but not limited to driver's licenses, telephone records, telephone bills, address and telephone books, canceled checks, receipts, bank records and other financial documentation on the owner's person, at the owner's residence or business, or in vehicles that they own, use, or have access to.  Additionally, these individuals often maintain holsters, spare magazines or speed loaders and other instruments to facilitate the use of firearms in furtherance of criminal activity or acts of violence.

41.     It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use prepaid cellular telephones and prepaid long-distance calling cards.  Often the only way to connect a subject with a particular prepaid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence.  The aforementioned items are frequently maintained in the drug trafficker's residence, place of business, or other areas they have access to.

42.     Drug traffickers often carry many of the items described above—including (but not limited to) drugs, drug proceeds, firearms, cellular phones—on their person.

43.     Drug dealers regularly use cell phones and other electronic communication devices to further their illegal activities.  As a result, evidence of drug dealing can often be found in text messages, address books, call logs, photographs, emails, text messaging or picture messaging applications, videos, and other data that is stored on cell phones and other electronic communication devices.  Additionally, the storage capacity of such devices allows them to be used for the electronic maintenance of ledgers, pay/owe logs, drug weights and amounts, customers contact information, not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The

Affidavit of Special Agent Casey J. Snyder – 14
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   records are kept in order to maintain contact with criminal associates for future

2   transactions and so that the trafficker can have records of prior transactions for which the

3   trafficker might still be owed money or might owe someone else money.

4        44.     Drug traffickers increasingly use applications on smartphones that encrypt

5   communications such as WhatsApp, or applications that automatically delete messages,

6   such as Snapchat, in order to avoid law enforcement monitoring or recording of

7   communications regarding drug trafficking and/or money laundering.  Evidence of the

8   use of such applications can be obtained from smartphones and is evidence of a

9   smartphone user's efforts to avoid law enforcement detection.

10                    **SEARCH AND SEIZURE OF DIGITAL MEDIA**

11       45.     As described above and in Attachment B, this application seeks permission

12  to search for items listed in Attachment B that might be found in **SUBJECT**

13  **PREMISES**,  including digital devices.

14       46.     In order to examine digital media in a forensically sound manner, law

15  enforcement personnel, with appropriate expertise, will conduct a forensic review of any

16  digital media seized.  The purpose of using specially trained computer forensic examiners

17  to conduct the imaging of any digital media or digital devices is to ensure the integrity of

18  the evidence and to follow proper, forensically sound, scientific procedures.  When the

19  investigative agent is a trained computer forensic examiner, it is not always necessary to

20  separate these duties.  Computer forensic examiners and investigators often work closely

21  with investigative personnel to assist investigators in their search for digital evidence.

22  Computer forensic examiners are needed because they generally have technological

23  expertise that investigative agents do not possess.  Computer forensic examiners,

24  however, may lack the factual and investigative expertise that an investigate agent may

25  possess.  Therefore, computer forensic examiners and agents often work closely together.

26  It is intended that the warrant will provide authority for the affiant to forensically review,

27  or seek the assistance of others in the HSI or within other law enforcement agencies to

28  assist in the forensic review of any digital devices.

Affidavit of Special Agent Casey J. Snyder – 15
USAO #2021R00039

47.     I also know the following:

a.      Based my knowledge, training, and experience, I know that computer files or remnants of such files may be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, this information can sometimes be recovered months or years later with forensics tools.  This is because when a person "deletes" a file on a computer, the data contained in the files does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in "swap" or "recovery" files.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.      Digital storage devices may also be large in capacity, but small in physical size.  Those who are in possession of such devices also tend to keep them on their persons, especially when they may contain evidence of a crime.  Digital storage

Affidavit of Special Agent Casey J. Snyder – 16
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   devices may be smaller than a postal stamp in size, and thus they may easily be hidden in

2   a person's pocket.

3           f.     As further described in Attachment B, this application seeks

4   permission to locate not only computer files that might serve as direct evidence of the

5   crimes described on the warrant, but also for forensic electronic evidence that establishes

6   how computers were used, the purpose of their use, who used them, and when.  There is

7   probable cause to believe that this forensic electronic evidence will be on digital devices

8   found in the **SUBJECT PREMISES** because:

9           g.     Data on the digital storage medium or digital devices can provide

10  evidence of a file that was once on the digital storage medium or digital devices but has

11  since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has

12  been deleted from a word processing file).  Virtual memory paging systems can leave

13  traces of information on the storage medium that show what tasks and processes were

14  recently active.  Web browsers, e-mail programs, and chat programs store configuration

15  information on the storage medium that can reveal information such as online nicknames

16  and passwords.  Operating systems can record additional information, such as the

17  attachment of peripherals, the attachment of USB flash storage devices or other external

18  storage media, and the times the computer was in use.  Computer file systems can record

19  information about the dates files were created and the sequence in which they were

20  created, although this information can later be falsified.

21          h.     As explained herein, information stored within a computer and other

22  electronic storage media may provide crucial evidence of the "who, what, why, when,

23  where, and how" of the criminal conduct under investigation, thus enabling the United

24  States to further establish and prove each element or alternatively, to exclude the innocent

25  from further suspicion.  In my training and experience, information stored within a

26  computer or storage media (*e.g.*, registry information, communications, images and

27  movies, transactional information, records of session times and durations, Internet

28  history, and anti-virus, spyware, and malware detection programs) can indicate who has

Affidavit of Special Agent Casey J. Snyder – 17
USAO #2021R00039

used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search of "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log computer activity associated with user accounts and electronic storage media connected with the computer.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Lastly, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit the crime (e.g., Internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

Affidavit of Special Agent Casey J. Snyder – 18
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper content, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

j.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

k.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing a user's intent.

l.      In most cases, a thorough search of a premises for information that might be stored on digital storage media or other digital devices often requires the seizure of the digital devices and digital storage media for later off-site review consistent with the warrant.  In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic copy of the digital media's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

m.      *The time required for an examination.*  As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.

Affidavit of Special Agent Casey J. Snyder – 19
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.  As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

n.    *Technical requirements.*  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on-site.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

o.    *Variety of forms of electronic media.*  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

48.    Searching computer systems is a highly technical process that requires specific expertise and specialized equipment.  There are so many types of computer hardware and software in use today that it is rarely possible to bring to the search site all the necessary technical manuals and specialized equipment necessary to consult with computer personnel who have expertise in the type of computer, operating system, or software application being searched.

49.    The analysis of computer systems and storage media often relies on rigorous procedures designed to maintain the integrity of the evidence and to recover "hidden," mislabeled, deceptively named, erased, compressed, encrypted or password-

Affidavit of Special Agent Casey J. Snyder – 20
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  protected data, while reducing the likelihood of inadvertent or intentional loss or

2  modification of data.  A controlled environment such as a laboratory, is typically required

3  to conduct such an analysis properly.

4      50.    The volume of data stored on many computer systems and storage devices

5  will typically be so large that it will be highly impracticable to search for data during the

6  execution of the physical search of the premises.  The hard drives commonly included in

7  desktop and laptop computers are capable of storing millions of pages of text.

8      51.    A search of digital devices for evidence described in Attachment B may

9  require a range of data analysis techniques.  In some cases, agents may recover evidence

10  with carefully targeted searches to locate evidence without requirement of a manual

11  search through unrelated materials that may be commingled with criminal evidence.

12  Agents may be able to execute a "keyword" search that searches through the files stored

13  in a digital device for special terms that appear only in the materials covered by the

14  warrant.  Or, agents may be able to locate the materials covered by looking for a

15  particular directory or name.  However, in other cases, such techniques may not yield the

16  evidence described in the warrant.  Individuals may mislabel or hide files and directories;

17  encode communications to avoid using keywords; attempt to delete files to evade

18  detection; or take other steps designed to hide information from law enforcement

19  searches for information.

20      52.    The search procedure of any digital device seized may include the

21  following on-site techniques to seize the evidence authorized in Attachment B:

22          a.    On-site triage of computer systems to determine what, if any,

23  peripheral devices or digital storage units have been connected to such computer systems,

24  a preliminary scan of images files contained on such systems and digital storage devices

25  to help identify any other relevant evidence or co-conspirators.

26          b.    On-site copying and analysis of volatile memory, which is usually

27  lost if a computer is powered down and may contain information about how the computer

28

Affidavit of Special Agent Casey J. Snyder – 21
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  | is being used, by whom, when and may contain information about encryption, virtual
2  | machines, or stenography which will be lost if the computer is powered down.
3  |         c.     On-site forensic imaging of any computers may be necessary for
4  | computers or devices that may be partially or fully encrypted in order to preserve
5  | unencrypted data that may, if not immediately imaged on-scene become encrypted and
6  | accordingly become unavailable for any examination.
7  | **CONCLUSION**
8  | 53.     Based on the information set forth herein, there is probable cause to search
9  | the above-described **SUBJECT PREMISES**, as further described in Attachment A, for
10 | evidence, fruits, and instrumentalities, as further described in Attachment B, of crimes
11 | committed by the individual listed in this affidavit and their coconspirators, specifically
12 | distribution of, and possession of, with intent to distribute, controlled substances, in
13 | violation of Title 21, United States Code, Section 841(a)(1).
14 |
15 |
16 |         CASEY J. SNYDER
17 |         Special Agent
18 |         USPS OIG
19 |
20 |     The above-named agent provided a sworn statement to the truth of the foregoing
21 | affidavit by telephone on the 26th day of May, 2021.
22 |
23 |
24 |
25 |         BRIAN A. TSUCHIDA
        United States Magistrate Judge
26 |
27 |
28 |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

**Place to Be Searched (SUBJECT PREMISES)**

The place to be searched is 2000 Northeast 16th Street, Renton, Washington 98056, a two-story structure located on the north side of Northeast 16th Street and is a corner house.  The exterior is a mix of light green/tan siding and rock, with tan trim.  The entry door is located to the left of the garage.  The numbers "2000" are located to the right side of the garage door.

The search is to include all storage areas associated within the premises, such as on-site storage lockers, detached storage sheds, and parking stalls, or safes; and any digital device(s) or other electronic storage media.



Attachment A
USAO #2021R00039 - 1

# **ATTACHMENT B**

## **List of Items to Be Seized**

Evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (Distribution of and Possession with Intent to Distribute Controlled Substances), involving TRI DUONG, as follows:

1.     Controlled Substances:  Including but not limited to methamphetamine, fentanyl, cocaine, crack cocaine, heroin, hashish, marijuana, MDMA, methadone, oxycodone, Oxycontin, Suboxone, Clonazepam, Alprazolam, Xanax, and Adderall;

2.     Drug Paraphernalia:  Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, DVD cases, cutting agents, scales, measuring equipment, vials, pill presses, Mylar bags, heat/vacuum sealers, tape, duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items;

3.     Drug Transaction Records:  Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances;

4.     Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe" sheets with drug amounts and prices, maps or directions, and similar items;

5.     Cash and Financial Records:  Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, and money counters;

6.     Photographs/Surveillance:  Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances;

7.     Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Codes:  Evidence of codes used in the distribution of controlled substances, including passwords, code books, cypher or decryption keys, usernames and/or credentials for dark web marketplaces, and similar information;

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented;

10.     Indicia of occupancy, residency, and/or ownership of assets including, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents;

11.     Evidence of Storage Unit Rental or Access:  Rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units;

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth;

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection accounts:  statements and other records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

i.      Insurance:  policies, statements, bills, and claim-related documents.

j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14.      All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money;

15.      All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, to include applications, payment records, money orders, frequent customer cards, etc;

16.      Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments;

17.      Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency;

18.      Correspondence, papers, records, and any other items showing employment or lack of employment;

19.      Telephone books, and/or address books, facsimile machines, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.  Also, telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-

Attachment B - 3
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds;

20.    Safes and locked storage containers, and the contents thereof which are otherwise described in this document;

21.    Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close said compartments;

22.    Any and all mailing documents and packaging materials related to U.S. Postal Service, UPS, and FedEx, including but not limited to USPS Express Mail labels, express mail and priority envelopes, first class mailings, receipts for USPS packages, and tracking information;

23.    Any records or information pertaining to the dark web and dark web marketplaces, including the Empire Market, Deep Sea Market, and White House Market;

24.    Any records or information pertaining to darknet monikers;

25.    Cryptocurrency applications and wallets, including information regarding current account balance and transaction history, i.e., date, time, amount, an address of the sender/recipient of a cryptocurrency transaction maintained in such wallets;

26.    Any records or information reflecting cryptocurrencies, including web history, and documents showing the location, source, and timing of acquisition of any cryptocurrencies, including wallets, wallet addresses, and seed phrases;

27.    Any and all cryptocurrency, to include the following: (a) any and all representations of cryptocurrency public keys or addresses, whether in electronic or physical format; (b) any and all representations of cryptocurrency private keys, whether in electronic or physical format; and (c) any and all representations of cryptocurrency wallets or their constitutive parts, whether in electronic or physical format, to include "recovery seeds" and "root keys" which may be used to regenerate a wallet.

a.    The United States is authorized to seize any and all cryptocurrency by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States.

Attachment B - 4
USAO #2021R00039

b.      The United States is also authorized to use the above-described recovery seeds and root keys to reconstitute and/or regenerate any associated cryptocurrency wallet and to seize any and all cryptocurrency stored in, or accessible via, such wallet by transferring the full account balance to a public cryptocurrency address controlled by the United States.

28.      Cell Phones: Cellular telephones and other communications devices may be seized, and searched for the following items:

a.      Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.    Stored list of recent received, sent, and missed calls;

c.    Stored contact information;

d.      Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs;

e.      Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wickr, Telegram, Signal, WhatsApp, Kik, and similar messaging applications, related to the aforementioned crimes of investigation or that may show the user of the phone and/or co-conspirators, including Apple iMessages, Blackberry Messenger messages or other similar messaging services where the data is stored on the telephone;

f.      Any Tor applications and records for Tor activity, including browser history and "bookmarked" or "favorite" web pages;

g.      Digital currency applications and wallets, to include information regarding current account balance and transaction history, i.e., date, time, amount, an address of the sender/recipient of a digital currency transaction maintained in such wallets;

h.      Stored documents, notes, and files that contain passwords/or encryption keys;

i.      PGP applications, to include stored private and/or public keys;

j.      Any records or information related to darknet monikers; and

29.     Digital devices, such as computers, and other electronic storage media, such as USBs and Trezor devices, may be seized, and searched for the following items:

a.     Evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chats," instant messaging logs, photographs, and correspondence;

b.     Evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.     Evidence of the lack of such malicious software;

d.     Evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f.     Evidence of the times the digital device or other electronic storage media was used;

g.     Passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

h.     Contextual information necessary to understand the evidence described in this attachment;

i.     Records or information pertaining to the dark web and dark web marketplaces, including the Empire Market;

j.     Any records or information pertaining to darknet monikers;

k.     Any records or information pertaining to Tor;

l.     Any records or information pertaining to mnemonic phrases;

Attachment B - 6
USAO #2021R00039

m.      Any records or information reflecting cryptocurrencies, including web history, and documents showing the location, source, and timing of acquisition of any cryptocurrencies, to include wallets, wallet addresses, and seed phrases; and

n.      Any records or information pertaining to PGP applications, to include private and/or public keys.

THE SEIZURE OF DIGITAL DEVICES IS AUTHORIZED FOR THE PURPOSE OF CONDUCTING OFF-SITE EXAMINATION OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.

Attachment B - 7
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970